

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-2007

# Hughes v. Smith

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1479

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Hughes v. Smith" (2007). *2007 Decisions.* Paper 824.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/824

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 06-1479

————————

GREGORY LAMONT HUGHES

v.

CAPT. THOMAS J. SMITH, III;
L. HATCHER; CAPT. BRUMFIELD

Gregory L. Hughes,
Appellant

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-05035
(Honorable Lawrence F. Stengel)

————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2007
Before: SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges

(Filed: July 2, 2007)

————————

OPINION OF THE COURT

————————

PER CURIAM.

Gregory Hughes, a former prisoner, filed a civil rights complaint against several

prison officials. The procedural history of this case and the details of Hughes's claims are

well-known to the parties, set forth in the District Court's opinion, and need not be discussed at length. The District Court granted appellees' motion to dismiss as to several claims and subsequently granted appellees' motion for summary judgment as to the remaining claims. Hughes filed a timely notice of appeal. We denied appellees' motion for summary affirmance, and the parties have filed their briefs. For the reasons below, we will affirm the District Court's order in part, vacate in part, and remand the matter to the District Court for further proceedings.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's orders granting appellees motions to dismiss and for summary judgment. Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998). A grant of summary judgment will be affirmed if our review reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the facts in a light most favorable to the party against whom summary judgment was entered. See Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F. 3d 144, 146 (3d Cir. 1993).

The District Court did not err in granting summary judgment for appellees on Hughes's claim that he was denied medical care when he refused to eat modified meals. Hughes has not submitted any evidence that the appellees were deliberately indifferent to any serious medical need. Hughes's allegations that his cell was searched do not state a claim under the Fourth Amendment. Hudson v. Palmer, 468 U.S. 517 (1984). The

2

District Court also correctly determined that Hughes had not exhausted his administrative remedies with respect to his claim that appellee Officer Tomlinson slammed Hughes's fingers in the cell's "wicker." Appellees' alleged failure to process Hughes's grievances did not violate his rights to due process and is not actionable. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). We note that in his grievances in which he complained that other grievances were not being addressed, Hughes did not allege that any grievances related to the alleged assault by Tomlinson were not processed. App. at Ex. F. The District Court correctly entered judgment for appellees on Hughes's claims of retaliation. It is clear from the record that the misconducts against Hughes would have been issued, he would have been given modified meals, and he would have been placed in the hard cell regardless of his filing grievances against prison officials

Hughes alleged that on September 17, 2001, Officer Polo, who had made sexual advances in the past, grabbed his testicles and penis during a pat-down frisk. However, in his response to a misconduct charge arising out of the incident, Hughes only alleged that Officer Polo, who had written the misconduct, had touched his testicles during the frisk. App. at A-2. Hughes never claimed in his submissions to prison officials and to the state police that Officer Polo had grabbed his penis.

The District Court held that Hughes's claim of sexual assault was barred by the two-year statute of limitations because the complaint was not filed until December 8, 2003. However, the complaint and a complete motion to proceed in forma pauperis were

received by the District Court on September 8, 2003. By order entered December 10, 2003, the District Court granted the motion to proceed in forma pauperis and ordered the complaint filed. In McDowell v. Delaware State Police, 88 F.3d 188 (3d Cir. 1996), this Court deemed a complaint to be constructively filed on the date the clerk received it, as long as the District Court ultimately granted the motion to proceed in forma pauperis or the plaintiff paid the filing fee. Thus, Hughes's complaint should be deemed filed as of September 8, 2003, and his claim of sexual assault is within the two-year statute of limitations for § 1983 claims.

Appellees argue that the dismissal of the sexual assault claim can be upheld on the alternate ground that Hughes has failed to state a claim. In Bradley v. United States, 299 F.3d 197 (3d Cir. 2002), this Court held that a patdown search performed on a woman by the United States Customs Service did not violate the Fourth Amendment. The inspector had allegedly used "her fingers to inappropriately push on [appellant's] breasts and into the inner and outer labia" through the appellant's dress. Here, Hughes, who was a prisoner in the Restricted Housing Unit at the time, challenges a single pat-down frisk in which the correctional officer allegedly touched his testicles through his clothing. While Hughes alleged that Officer Polo had made sexual comments in the past, Hughes does not claim that any such comments were made during the frisk at issue. We conclude that Hughes's allegations do not rise to the level of an Eighth Amendment violation and will affirm the District Court's dismissal of this claim on that alternate ground.

Hughes alleged that on May 4, 2002, he was pulled out of his cell and assaulted. He claimed that after his cell had been ransacked by appellee Sgt. Zeidenburg, Hughes waved a towel from the food tray slot in his cell door to get the attention of a supervising officer who was on the block. He claimed that Sgt. Zeidenburg had Hughes's cell opened and pulled him out. Sgt. Zeidenburg then allegedly kneed him in the groin, choked him, and punched him. Hughes also alleged that appellee Officer Dombrowski tackled him.

The District Court concluded that Hughes had not exhausted his administrative remedies with respect to this claim. However, the appellees did not argue an exhaustion defense for this claim and, in fact, conceded that Hughes had exhausted his claim with respect to this incident. The District Court also briefly addressed the merits of Hughes's Eighth Amendment claims in a footnote. It concluded that there was no evidence that the correctional officers used any more force than was necessary. Op. at 9 n.3.

In his complaint, Hughes alleged that Sgt. Zeidenburg kneed him in the groin, choked him, and punched him. At his deposition, Hughes testified that Sgt. Zeidenburg put him in a headlock and punched him; there was no mention of being kneed in the groin. Hughes alleged in his complaint that Officer Dombrowski tackled him. Hughes admitted at his deposition that he resisted Sgt. Zeidenburg's entry into the cell and that "[they] got to scuffling." Because Hughes admitted to resisting and "scuffling" with Sgt. Zeidenburg, the force used by appellees was not excessive, and they are entitled to summary judgment on Hughes's claim of excessive force.

5

In his complaint, Hughes claimed that beginning on May 4, 2002, after the incident with Sgt. Zeidenburg, he was deprived of "adequate bedding, mattress [sic] and water" for eight days while in a "hard cell."[1] He claimed that he suffered from "extreme mental anguish and pain" from sleeping on the concrete floor without a mattress. In a sick call request form dated May 6, 2002, Hughes stated that the mattress he had been given had "wool fibers shedding out of it" and he was allergic to wool. App. at J-6. Hughes does not allege that the prison officials knew that he was allergic to wool. We conclude that the deprivation of a non-wool mattress for eight days does not rise to the level of an Eighth Amendment violation. As for his claim that he was deprived of adequate water, Hughes did not allege that he suffered any ill effects from this deprivation.

Hughes also alleged that he was denied "adequate yard exercise" for thirteen months, from August 2002 until the complaint was filed in September 2003, in retaliation for reporting previous problems with a correctional officer. "There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). As noted by the District Court, Hughes testified at his deposition that every morning he stood "at the gate with my

---

[1] At his deposition, Hughes alleged that he was also denied food. However, this allegation was not included in his complaint. Moreover, in his grievances, Hughes never alleged that he was denied food. In his response to the appellees' answer, Hughes alleged that he was deprived of "adequate meals," not that he was denied food altogether.

lights on and requesting for yard exercise" but appellee Officer Heller would not put his name on the list.

The District Court stated that the denial of exercise did not rise to the level of a constitutional violation. The District Court viewed the claim as only alleging a denial of exercise time during the month of August 2002. It concluded that there was ample evidence that Hughes exercised on the days in question. The District Court based its conclusion on the daily logs of the Restricted Housing Unit (RHU). While these logs may be probative as to whether Hughes was actually denied exercise time, the RHU logs are only as accurate and truthful as their authors. It appears that the District Court credited the prison's unsworn RHU logs over Hughes's sworn allegations of being denied exercise time. A credibility determination is inappropriate in the summary judgment context. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

It is not clear how frequently during the thirteen months at issue Hughes is alleging he was denied time in the exercise yard. Because the District Court misapprehended the scope of this claim, we will vacate the District Court's judgment as to the denial of exercise claim and remand for further proceedings. On remand, the District Court may wish to direct Hughes to clarify his allegations.

For the above reasons, we will vacate the District Court's judgment with respect to Hughes's claim concerning denial of exercise time. We will affirm the District Court's judgment as to the remaining claims.

7